UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| OMAR GUERRERO PARRA, JERRY WINKLER, | ) | |
| and MICHELLE WINKLER, individually and on | ) | |
| behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01638-TWP-DLP |
| | ) | |
| UHS HOME SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

This matter is before the Court on a Motion for Conditional Certification filed by Plaintiffs,

Omar Guerrero Parra ("Parra"), Jerry Winkler, and Michelle Winklera (collectively, "Plaintiffs").

(Filing No. 17).   The Plaintiffs initiated this action to recover overtime wages for themselves and

home remodelers' who have worked for Defendant, Unique Home Solutions, Inc., ("UHS") and

were unpaid or underpaid by UHS in violation of the Fair Labor Standards Act ("FLSA").

Plaintiff's ask that the Court grant conditional certification of a proposed class of plaintiffs in a

class action against UHS.   Also before the Court is UHS's Motion for Leave to File a Surreply on

Plaintiffs' Motion for Conditional Certification (Filing No. 31).   For the reasons that follow, UHS

is **granted** leave to file its surreply, and the Plaintiffs' Motion for Conditional Certification is

**granted**.

## I.   BACKGROUND

UHS, an Indiana company with its principal place of business located in Indianapolis,

Indiana, is a home remodeling company which also has a location in Cleveland, Ohio. UHS offers

home improvement services to homeowners throughout Indiana and Ohio such as window

replacements, siding, roofing, and bathroom remodels.  (Filing No. 15 at 2.)  Plaintiffs Parra, Jerry Winkler and Michelle Winkler, are former employees of UHS. Off and on, their combined employment by UHS covered between 2016 until February 2019.   Plaintiffs propose to bring this action on behalf of themselves and all home remodelers, except staffing or frontline supervisors, who have been employed by UHS at any time since three years prior to filing of their Complaint until the date of final judgment. (Filing No. 1 at ¶ 37.)

Plaintiff's assert that their pleadings and UHS own documents show that UHS subjected Plaintiffs and all other home remodelers to similar unlawful practices: paying them piece rates and not paying them overtime in violation of the FLSA. (Filing No. 17 at 1). Generally, the regular rate paid by UHS has varied, depending on the type of work being performed, pursuant to a piece rate schedule. (Filing No. 17 at 2).   On a regular basis, Plaintiffs and other members of the proposed class were paid less than the full minimum wage and were required to work beyond their scheduled work hours, and UHS knowingly and willingly refused to pay them for those overtime hours worked, despite that time being properly compensable.   *Id*.

Plaintiffs assert that the overtime rate paid by UHS for hours worked in excess of 40 hours per workweek has been $0.00 per hour. UHS also failed to pay Plaintiffs the appropriate overtime premium when they worked overtime and has failed to keep track of employees' hours worked, relying only on paying the rate per piece installed. Plaintiffs and other home remodelers employed by UHS routinely work more than forty hours per work week. They are required by UHS to arrive at the shop in the morning to load trucks with materials for the day's jobs. UHS's Job Management document describes this as "Office Time." (*See* Filing No. 17-3.)   Once installers load their truck and receive their job packet, they are required to travel to the jobsite. Some days, the employees

spend hours working before they even begin to do any construction work on a particular job.   All of this time is incorporated into their piece rate. At the end of the day, they are required to return to the shop to unload their trucks and dispose of any waste.   Plaintiff's explain that UHS does not record any of this time. Rather, it relies on GPS data from when the trucks leave and return to the shop. This data does not account for the hours spent loading and unloading the trucks each day.

UHS denies that Plaintiffs were underpaid or that they worked the overtime hours alleged in the Complaint and provides a declaration from Gary Roberson, the Vice President of Field Operation for UHS.   (Filing No. 23-1.)   Roberson confirms that UHS compensates its employees through a piece rate (which is current industry standard) and compensates employees for all hours worked per job. *Id*. at 3.   Roberson presents evidence that installers are rarely required to drive more than an hour each to a service site.   *Id*. at 2.   Parra was employed with UHS as a bath installer from August 2016 until January 30, 2018; Jerry Winkler and Michelle Winkler were employed as siding installers from September 2016 until December 29, 2017, rehired on January 22, 2019, and then terminated on February 4, 2019.   *Id*. at 3.   UHS affirms that each piece rate differs depending on the type of installation.   Roofing/siding/and gutter installers are paid per square foot of roofing/siding/gutters installed, and window/door installers are paid per window/door installed.   UHS affirms that the piece rate covers all hours worked, including preparation time at the office and travel to and from the worksite.   *Id*. at 3 ¶ 8. According to Roberson, the piece rate covers all hours worked, including prep time at the office and travel to and from the worksite. *Id*. at ¶ 9.

In their Reply, Plaintiffs submit declarations in support of their claims. Parra, Michelle Winkler and Jerry Winkler, each declare that while they were employed by UHS, they were

compensated on a piece rate basis, required to work more than 40 hours per week and there were weeks when each was not compensated at a rate of one and one half time their regular rate of pay for overtime hours. (Filing No. 28-1, Filing No. 28-2, and Filing No. 28-3.)   They each affirm that UHS did not track the hours that they worked and did not compensate them for time spent working in the shop, preparing materials and tools or traveling to and from job sites, even though UHS required them to complete these tasks as part of their job.   *Id*.   Plaintiffs each affirm that based on their conversations with other UHS employees, they believe that these practices are uniform across the company and apply to all of UHS's installers. *Id*.

## II.   LEGAL STANDARD

Under the FLSA, an employee is permitted to maintain a collective action for "unpaid overtime compensation . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).   The "District Court has the discretion to authorize notice to similarly situated employees so that they may opt-in to a class."   *Carter v. Indianapolis Power & Light Co*., 2003 U.S. Dist. LEXIS 23398, at *7 (S.D. Ind. Dec. 23, 2003).   "Such a collective action differs significantly from a Rule 23 class action.   Potential class members in a collective action must affirmatively opt-in to be bound, while in a Rule 23 action they must opt out [to] not be bound." *Cheesman v. Nexstar Broad. Grp., Inc*., 2008 U.S. Dist. LEXIS 42265, at *3 (S.D. Ind. May 27, 2008) (emphasis in original).   The standards governing class certification under Rule 23 are not applicable to FLSA collective actions.   *Id*. at *5.

Courts in the Seventh Circuit engage in a two-step inquiry to determine whether an FLSA action may proceed as a collective action. *Id*. The first step is called the "notice stage" and "involves an analysis of the pleadings and affidavits which have been submitted to determine

whether notice should be given to potential class members." *Id*. (quoting *Carter*, 2003 U.S. Dist. LEXIS 23398, at *8). "The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute." *Id*.

During the initial "notice stage," a plaintiff does not have to prove his entire case.   Rather, the plaintiff must make only a threshold showing that he is similarly situated to the employees on whose behalf he seeks to pursue claims. *Coan v. Nightingale Home Healthcare, Inc.,* 2005 U.S. Dist. LEXIS 15475, at *3 (S.D. Ind. June 29, 2005). This threshold showing is "relatively modest." *Id*. "The modest factual showing required at the first step of the proceedings may be lenient, but it is not a mere formality."  *Allen v. Payday Loan Store of Ind., Inc*., 2013 U.S. Dist. LEXIS 169971, at *4 (N.D. Ind. Dec. 3, 2013) (citation and quotation marks omitted).   "[T]o meet their burden, Plaintiffs must provide evidence via an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy."  *Id*.  Although the first step of certification does not impose a high burden, "this does not mean that the 'modest factual showing' is a mere formality." *Simmons*, 2014 U.S. Dist. LEXIS 102420 at *4 (quoting Campbell, 2010 U.S. Dist. LEXIS 87077 at 4).

> The first step serves as an important and functional step in the certification process because it would be a waste of the Court's and the litigants time and resources to notify a large and diverse class only to later determine that   the matter should not proceed as a collective action because the class members are not similarly situated.

*Id.*

### III.  DISCUSSION

As an initial matter, the Court **grants** UHS's Motion for Leave to File a Surreply on

5

Plaintiffs' Motion for Conditional Certification (Filing No. 31). Courts allow a surreply only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response. *See, e.g.*, *id.*; *Miller v. Polaris Labs., LLC*, 2014 U.S. Dist. LEXIS 18161 (S.D. Ind. Feb. 12, 2014).   In their Reply, Plaintiffs submitted new evidence that was not included in their opening brief.   Specifically, the Affidavits of Parra, Michelle Winkler and Jerry Winkler were not previously produced to UHS or attached to Plaintiffs' motion or opening brief.   Therefore, the Court will consider UHS's surreply (Filing No. 31-1), when making its decision on the pending motion.

Among other things, the FLSA prohibits employers from working their employees more than forty hours in a work week without compensating the employee overtime wages at a rate of at least time and a half for hours worked in excess of forty hours.   29 U.S.C. §§ 207, 215(a)(2). "An employee must be paid for all time spent in physical or mental exertion, whether burdensome or not, controlled and required by the employer, and pursued necessarily and primarily for the benefit of the employer or his business." *Sehie v. City of Aurora*, 432 F.3d 749, 751 (7th Cir. 2005). (Citations and internal quotations omitted.) Time that an employee spends traveling from one worksite to another during a given workday is compensable under the FLSA. Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.   29 C.F.R. § 785.38. *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1120 (10th Cir. 1999) (holding that shuttle time between split shifts was compensable and not a bona fide meal period because this travel was required).

The Plaintiffs seek to protect the rights of current and former home remodelers who went

unpaid or underpaid by UHS by sending those remodelers a court-approved notice of this action and letting them decide whether to seek unpaid overtime wages under the FLSA. Plaintiffs contend that during the relevant time period, the full minimum wage rate applicable to them was $7.25 per hour for all hours worked through the present. In the case of repairs to work already performed, UHS paid Plaintiffs and other employees a flat rate (usually $75.00), irrespective of the amount of time it might take an installer to make the repair. Parra presents several paystubs to show that UHS does not keep track of the employees' hours, and to show only a flat rate of compensation for work that has been completed. (Filing No. 17-2.)

Plaintiffs submit declarations in which Parra, Michelle Winkler and Jerry Winkler, each describe the tasks they performed, and explain that while they were employed by UHS, each was compensated on a piece rate basis, required to work more than 40 hours per week and they were not compensated for overtime. The Plaintiffs each affirm that based on their conversations with other UHS employees, they each believe that these practices are uniform across the company and apply to all of UHS's installers. Plaintiffs argue that this is enough to meet the lenient, relatively modest threshold showing that they are similarly situated to other installers who were denied overtime wages by UHS. And thus, they assert, their claim should be certified as a collective action.

In response to the Motion, UHS argues that Plaintiffs' class definition is too vague for certification and is overly broad in the time period requested. Plaintiffs seek to represent all "home remodelers," but do not define this term, and such a title is not used by UHS. The proper look-back period is three years from the date the class is certified (not when the Complaint was filed) and their request to include future employees in the class is improper. (Filing No. 23 at 2). Thus,

even if the Court decides certification is appropriate, the Court should deny the proposed scope of Plaintiffs' class.

Regarding Plaintiffs' factual showing that they are victims of a policy that violated the FLSA, UHS contends the Plaintiffs have failed to demonstrate they or any similarly situated employee was a victim of a plausible minimum wage violation. UHS disputes that it pays its installers a $75.00 flat rate for making repairs and argues that it does not have a policy that violates FLSA standards. (Filing No. 23-1.) A piece rate may cover all hours worked by the employee – including travel time and preparation time – as long as this is understood by the parties. *See* 29 C.F.R. § 778.318(c). Plaintiffs' conclusion that UHS "did not compensate" them for this time, while acknowledging UHS paid them a piece rate, is conclusory as it does not address whether Plaintiffs understood the piece rate would cover this time. UHS asserts this is especially true in light of UHS submitting uncontroverted evidence that the piece rate covered all hours worked. (Filing No. 23-1 at ¶¶ 7-9.)

Plaintiffs argue they have a reasonable basis for believing that they are similarly situated to all of the potential plaintiffs who could fall within this class. Plaintiffs contend they are adequate representatives of these classes. They are home remodelers like the other members of the class and were subjected to the same illegal practices as the other class members. They were not paid for the time and mileage associated with the mid-shift travel, like the other class members. Likewise, they were required to work prior to or past their scheduled clock-in or clock-out times without payment of compensation for the overage, as were the other class members. And they, along with the other class members, should have been, but were not, paid overtime wages for any time worked in excess of 40 hours per week, calculated after the addition of time payable for mid-

8

shift travel and hours worked prior to past scheduled clock-in or clock-out times.

UHS challenges the sufficiency of Jerry Winkler's and Michelle Winkler's statements in their declarations that, "[i]n some instances, UHS did not compensate [them] for repairs of jobs, paying [them] only a piece rate which amounted to compensation significantly less than minimum wage considering the time spent completing the repairs".   (Filing No. 28-2 at ¶ 8; Filing No. 28-3 at ¶ 8.)   UHS argues these allegations are insufficient to demonstrate that Plaintiffs were victims of a minimum wage violation, let alone sufficient to establish a common policy that violated the minimum wage obligation.

The Court is not persuaded by UHS's arguments.   Their arguments go primarily to the merits of the claim, not to the similarity (or dissimilarity) of Plaintiffs to other potential plaintiffs. As another court in this District noted, "A plaintiff need not provide conclusive support for their similarly situated argument, but instead merely an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy."   *William v. Angie's List, Inc.*, 223 F. Supp. 3d 779, 783 (S.D. Ind. 2016) (citation and quotation marks omitted).

The declarations that the Plaintiffs submitted illustrate the similarities among themselves and other UHS's installers. Although UHS declaration alleges differing results for compensation of piece workers than Plaintiffs' declarations, each of the declarations show similar job responsibilities and working conditions at their core among the installers. Additionally, the declaration provided by UHS does not dispute that Plaintiffs or members of the proposed class may have been paid less than minimum wage for their work under UHS's compensation scheme. And, HUS does dispute that it pays employees a flat rate for repairs regardless of the time spent

working on those repairs.

The arguments advanced by each party and the evidence offered show that installers employed by UHS have similar job responsibilities, are subject to similar company policies and practices, and are paid under a similar compensation structure. It appears that Plaintiffs and the potential class plaintiffs are similarly situated employees who were subject to a common policy, plan, or practice.  The issue to be resolved later on the merits is whether that common policy, plan, or practice violated the law. Therefore, the Court concludes that Plaintiffs meet their burden of making a modest factual showing that they are similarly situated to the potential plaintiffs to conditionally certify a collective action against UHS.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In (Filing No. 17), is **GRANTED** and conditionally certifies the FLSA claim as a collective action for the following class:

> All home remodelers, except staffing or frontline supervisors, who have been employed by Defendants at any time since three years prior to the filing of this Complaint until the date of class certification.

The parties shall proceed as follows:

> 1. Within **14 days** of this Order, Defendants shall fully answer Plaintiff's Expedited Opt-In Discovery, and shall provide to Plaintiff and the Court an Excel spreadsheet containing the name, last known home address (including zip code), last known telephone number, last known email address, and employment dates (in Microsoft Office Excel format) of all former and non-exempt home remodelers of UHS Home Solutions who were paid a piece rate and/or worked overtime without proper compensation at any time between January 1, 2016 and the present; and

> 2. Within **10 days** of this Order, the parties shall submit to the Court proposed language for notification and consent forms to be issued via First-Class Mail and Email, apprising potential plaintiffs of their rights under the FLSA to opt in as parties to this litigation. In drafting the proposed notification language, the parties

should "be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

The potential plaintiffs shall have **(60) days** after the deadline for mailing of the Notice of Right to Join Lawsuit to return a Consent to Join form to opt-in to this litigation, unless the parties agree to permit late filings or good cause can be shown as to why the form was not returned prior to the deadline.

**SO ORDERED.**

Date:   5/27/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
alowe@rwp-law.com

William N. Riley
RILEY WILLIAMS & PIATT, LLC
wriley@rwp-law.com

Christopher E. Clark
GOODIN ABERNATHY LL
cclark@goodinabernathy.com

Brian L. McDermott
JACKSON LEWIS PC (Indianapolis)
brian.mcdermott@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com